Cox *vs.* The State of Georgia.

---

THOMAS W. COX, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. In a detailed statement of facts, made by the Court to the jury, in the hypothesis on which he rested the law as applicable thereto, in the charge given, one view of the case upon the evidence, which was all important to the defendant, was entirely omitted:   *Held*, that this was error.
2. Whilst it may not be the duty of the presiding Judge, in his charge to the jury, to sum up the facts in proof by way of hypothesis or otherwise, yet if he undertakes to do so, he must include all that might be important to the defence.

Indictment for murder, in Polk Superior Court.   Tried before Judge HAMMOND, at October Term, 1860.

At the April Term, 1858, of Polk Superior Court, a bill of indictment was filed and found against Thomas W. Cox, charging him with the murder of a negro man slave by the

name of Humphrey, the property of Abraham Jones, on the 11th of January, 1858.

The defendant was brought to trial at October Term, 1860.

The following testimony was adduced on the trial, to-wit:

ABRAHAM JONES testified, that on the 11th of January, 1858, he heard a pistol fire, and then heard some one hallooing; that on being told that Humphrey was killed, he went to him, and found him in a dying condition; that he was shot in the back of the head, and his brains were running out at the bullet hole; that witness then hearing some one hallooing in the swamp, went to the place and found Cox wringing his hands and crying; Cox asked witness if he was going to shoot him, to which witness replied, "no, if you will do right;" Cox said he had done wrong, and begged witness not to shoot him; witness asked Cox for his pistol, which he gave to witness, it was one of Allen's patent, with six barrels, five of them being heavily loaded; Cox's wife came up, and asked him what made him do it, to which Cox replied, that he did not know what made him do it; witness carried Cox to where the negro was, and the negro said that Cox had shot him, and he reckoned he was satisfied; Cox seemed greatly distressed at the groans of the negro, and said in reply to the negro, that he (Cox) had done wrong; Cox begged witness to take him away from hearing the negro's groans, which witness, for some time, refused to do, and told Cox that he had a great mind to take the gun and shoot his brains out, to which he replied, that that would do no good, and would only place witness in the same condition that he (Cox) was in; witness thinks that if the negro had resisted Cox, the latter would have been afraid to tell witness of it, because he knew that witness would not have believed it, as the negro had never resisted anybody; when witness told Cox to go where the negro was, he did it more in a tone of command than of invitation or request; the negro died about 12 or 1 o'clock on the same day that he was shot; Cox was employed by witness to work with and control the negroes under witness's direction.

The State rested the case at this point.

JOHN ROWE, witness for defendant, testified to a conversation with the deceased negro about Cox, the defendant, in which the witness told the negro that he was acquainted with Cox, the negro's overseer, and thought he was a clever man and would make a good master to the negro, to which the negro replied: "You don't know Cox as well as I do, if you had seen him treat the negroes as I have, you would not say so, and if Cox treats me as he did a negro a day or two ago, he will never treat another one so."

LUCIUS THOMPSON testified: That he was going through Mr. Abraham Jones' new ground on the morning of the homicide; heard the report and saw the smoke of the pistol; heard some one halloo; thought it was a woman; heard it again, and went to where the negro was lying; saw Cox as he (the witness) was going after Jones; Cox beckoned witness to him; Cox then told witness that he went up to the negro, and the negro took hold of him and he shot him; asked witness if he thought Jones would shoot him; witness said he did not think he would; Cox then said, if he thought Jones would not shoot him, he would stay until he came; the conversation with Cox occurred two or three minutes after the pistol fired; at the place of the killing the leaves seemed to be trodden, as if persons had stood round there; looked different from other places; lived about one mile or little more from Jones', and saw Cox at work with the negroes in the same new ground; the leaves were trodden, where some one had been cutting on a log, and on the opposite side from where the negro was lying; the negro seemed to be going sorter quartering to the house from the log, and rather round a chestnut log; his head was lying toward Jones' house; there was no sign of powder burn on the deceased, but there was powder burn on another negro named Claiborne; the deceased was a very stout, able negro, and weighed from one hundred and seventy-five to one hundred and ninety pounds, and was about twenty-five or thirty years old; he has the impression that Cox had a scratch on his face the day of the killing.

EDWARD G. COURSEY testified to a conversation with the

deceased, two or three weeks before the homicide; Cox was living with Jones at the time; the deceased and witness were talking about Cox whipping the negroes; the deceased said that he whipped some of them mighty bad; that he did not want Cox to whip him that way, for if he did, he (the negro) would have to do something that he did not want to do; that Jones had offered to sell him to anybody who would give his price, but that when Bob Jones had offered to give the $1600 00 that Abraham Jones, his master, refused to take it. This conversation occurred in Jones' new ground, when witness was out hunting the cows.

Here the defendant rested the case.

CHAPLEY ECHOLS, introduced by the State, testified to a conversation with Cox a short time before the killing, in which Cox said that he was getting on at Jones' pretty well; that he had all the negroes under subjection except Humphrey; that he owed him a whipping, and would give it to him the first chance; that he had found a rock in a basket of cotton. Witness afterward heard Cox say—pointing to the fire board, upon which a pistol was lying—that will get Humphrey. Witness had Humphrey at his house at work, and heard him say that Cox should not kill him, and that he should not whip him; on the day of the homicide, and before Humphrey died, witness saw a mark or scratch on Cox's neck; witness was at the place where the negro was shot before the negro died, and where he was killed the leaves were beat down as though something had dragged over them, or they had been stamped down; the leaves had this appearance, from where there had been some chopping, to where the negro was lying, and the stamped place ended there; witness talked with Cox in the bottom after the negro was shot; witness asked Cox why he shot the negro, to which Cox replied, that he did not know; Jones and Mrs. Cox were present; afterwards, and when witness and Cox were aside to themselves, he again asked Cox why he shot the negro, to which Cox answered, that he went up behind the negro, where he was chopping on the log, and took hold of him, and witness thinks that Cox said the negro dropped the axe

and turned upon him, and took him by the throat, and threw him down over a log or brush, and that he then called Claiborne, another negro, to take hold of him, which Claiborne did, and that deceased then let go his hold on Cox and broke to run, and as he, Cox, rose from his position, he drew his pistol and fired at him; witness saw a singed place in Claiborne's hat that looked like the touch of a ball; Humphrey was shot in the back part of the head, rather on the left side, the ball ranging upward, as if it would have come out near the upper part of the forehead; this conversation with Cox occurred an hour, or an hour and a half after the shooting.

DAVID CLOPTON testified, that the place where the negro was killed was like ordinary places in a new ground where cutting had been done, the leaves seemed troughed up, and torn up in little piles, between where the negro lay and where the cutting in the log had been done; saw a scratch on Cox's face, as though done with the fingers.

B. H. WINFREY testified, that he heard a conversation at Cox's house on Sunday between Cox and the witness, Echols, about the rock in the cotton; he thinks Cox said that Jones protected Humphrey, and that the next time he, Cox, undertook to whip Humphrey, he would whip him or hurt him one; Cox's pistol was lying up on the fire board, and pointing to it he, said, if Humphrey undertook to run or resist, there is what would catch him; this conversation is the same Echols testified about, and was with him.

Mrs. WINFREY testified to about the same as her husband.

ABRAHAM JONES being re-introduced by the State, testified, that he told Cox not to whip Humphrey about the rock in the cotton; there were marks about the place where the negro was shot, the ground was damp, the log seemed to be the top cut of a rail tree; Cox came to witness's place to work the last of November or first of December preceding the homicide.

Counsel for defendant asked the Court, in writing, to charge the jury: "that if a master or overseer undertake to whip a slave belonging to such master, or under the control of such overseer, and the slave refuses to submit to the whipping, or

resists the whipping, such refusal or resistance is an act of revolt, and if the master or overseer kill the slave in such act of revolt, the killing is justifiable homicide; and if you believe such to be the facts of this case, from the evidence, you must find the defendant not guilty, and if you have a reasonable doubt as to whether such are the facts of this case, still you must give the defendant the benefit of the doubt, and find him not guilty."

The presiding Judge declined to give this charge, and counsel for the defendant excepted.

The Court charged the jury: "That if defendant went and laid hold on the negro man, Humphrey, for the purpose of chastising him, and said negro resisted, and shoved defendant down, and took defendant by the throat, and if said negro · was taken· off and ran, that said negro was not in revolt at the time when he ran, and if said defendant shot said negro at that time, he would be guilty of murder if he shot with a deliberate intention to take the negro's life. If he shot said negro at that time, under sudden heat of passion, he would be guilty of manslaughter."

The jury returned a verdict against the defendant, finding him guilty of voluntary manslaughter.

Counsel for defendant then moved for a new trial of said case on several grounds, and amongst them the following, which was the only ground upon which the Supreme Court passed judgment, to-wit: That the presiding Judge erred in charging and in refusing to charge the jury as hereinbefore stated.

The Court refused the new trial, and defendant alleges that the refusal was error.

CHISHOLM & WADDELL, IRWIN & LESTER, BUCHANAN and SHROPSHIRE, for plaintiff in error.

M. KENDRICK, (Solicitor General,) *contra.*

*By the Court.*—LYON, J., delivering the opinion.

In the detailed statement of facts as made by the Court to the jury, in the hypothesis on which he rested, the law applicable thereto, in the charge given, one view of the case upon the evidence was omitted, which was of the utmost importance to the defence. The circumstances of the killing are ascertained entirely from the declarations of the defendant. The first reason given by the accused was made, in two or three minutes after the shooting, to the witness, Thompson. Cox then said, that " he went up to the negro, and the negro took hold of him, and he shot him." This declaration was a part of the *res gestæ* ; was evidence for the prisoner, and was made at or near the time of the shooting, when the true inducement or necessity for shooting was impressed most strongly on his mind. From that impression of the mind he is supposed to have spoken and acted. It was the version on which the defence was put, and was the evidence of the defendant.

Now, if the prisoner shot while the negro had hold of him, or upon the idea that it was necessary to do so in his defence, he is not guilty of a crime, and ought not to be convicted of one. The Court, by the charge made in effect, excluded this view; he rejects this evidence as furnishing a basis on which the jury should act in their deliberations, and instead, takes the version or declaration of the prisoner as testified to by the witness, Chapley Echols, which was put in evidence by the prosecution. Although the Court does not, in so many words, direct the jury that this first declaration was not evidence, and should not be considered by them, yet by not including it in his hypothesis, he not only left them at liberty to disregard it altogether as he had done, but his failure to do so was well calculated to impress the jury with the idea that it was worthless as evidence. For this reason we think the charge had a tendency to mislead the jury, and was therefore erroneous. In so holding, however, we do not hold that it is the duty of the Court, in his charge to the jury, to sum up or state the facts in proof by hypothe-

sis or otherwise, but if he undertakes to do so, he must include all that might be important to the defense.

Let the judgment be reversed.

Mr. Justice JENKINS dissented from the judgment in this case.